# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHRISTINA DAWN WINKLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-150-F** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Christina Dawn Winkleman brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 12, hereinafter "R.__"). The parties have briefed their positions and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her application for DIB on January 20, 2011. R. 95-96, 118-20. Plaintiff alleged a disability onset date of September 1, 2002, and sought

benefits on the basis of agoraphobia, panic disorder, depression, anxiety, ADD, and photosensitive rashes. R. 95, 118, 152. Following denial of her application initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 11, 2012. R. 22-37, 38-49, 55-58. Plaintiff, accompanied by counsel, attended and testified, as did her husband. R. 22-37. The ALJ issued an unfavorable decision on September 28, 2012. R. 11-17.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff's last-insured date was June 30, 2007, and that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 13; *see* 20 C.F.R. §§ 404.131, .1505(a), .1520(a)(4)(i). At step two, the ALJ determined that Plaintiff had the medically determinable impairments of depression, skin rash, wrist strain/sprain, and sprain/strain thoracic region. R. 13-14; *see* 20 C.F.R. § 404.1520(a)(4)(ii), (c). The ALJ further determined that none of Plaintiff's impairments, alone or in combination, constituted a "severe" impairment that significantly limited Plaintiff's "ability to perform basic work-related activities for 12 consecutive months." R. 14-17; *see* 20 C.F.R. §§ 404.1520(c), .1521, .1523. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged onset date of September 1, 2002, through Plaintiff's last-insured date of June 30, 3007. R. 17; *see* 20 C.F.R. §§ 1520(a)(4)(ii), (c).

Plaintiff's request for review by the Appeals Council was denied on December 16,

2013. R. 1-6. Thus, the September 28, 2012, determination of the ALJ is the Commissioner's final decision on Plaintiff's DIB application. S*ee* 20 C.F.R. § 404.981. Thereafter, Plaintiff commenced this appeal.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

Plaintiff's overarching argument on appeal is that she was disabled prior to June 30, 2007, and that the ALJ's step-two finding of no severe impairment is legally erroneous and unsupported by substantial evidence. Plaintiff attacks the ALJ's finding that Plaintiff did not have a severe mental impairment(s) during the relevant time period on several different grounds. *See* Pl.'s Br. (Doc. No. 14) at 3, 7-12; Pl.'s Reply (Doc. No. 16) at 4. For the reasons outlined below, none of Plaintiff's arguments is availing, and reversal is not warranted.

In order to award benefits on a DIB application, the claimant must establish disability on or before his or her date last insured, rather than at some later date. 20 C.F.R. § 404.131; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). Here, it is undisputed that Plaintiff's date last insured was June 30, 2007, but she did not file her DIB application until January 20, 2011. *See* R. 118. Nor is it disputed that the bulk of the medical evidence of record was generated in 2010 and 2011—years after the time period within which Plaintiff must show she was disabled. *See* R. 208-23, 226, 255, 257-89. Finally, there is no contention by Plaintiff or indication in the record that the scarcity of 2002-2007 medical evidence is due to a failure on the part of the SSA to develop an adequate record. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); 20 C.F.R. § 404.1512(d); *cf.* R. 173-74 (SSA report of disability agency employee telephoning Plaintiff to inquire about any pre-2007 medical sources).

A.  *Third-Party Function Report and Testimony of Plaintiff's Husband*

4

Plaintiff first argues that because the alleged onset date (September 1, 2002) and the date last worked (July 2007) were so far in the past, and because of the irregular record for that period, the ALJ should have relied upon the Third-Party Function Report supplied by Plaintiff's husband to find that Plaintiff was disabled. Pl.'s Br. at 7-9 (citing *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2003); SSR 85-16, 1985 WL 56855 (1985)); Pl.'s Reply at 3-4.

In *Blea*, the Tenth Circuit found that an ALJ's failure to "mention" the testimony of the claimant's wife and to "discuss why he rejected her testimony" required remand because the wife's testimony regarding her husband's depression was uncontroverted and it was "not at all 'clear that the ALJ considered [the wife's] testimony in making his decision.'" *See Blea*, 466 F.3d at 914-15 (quoting *Adams v. Chater*, 93 F.3d 712 (10th Cir. 1996)). Here, by contrast, the ALJ explicitly discussed and considered Plaintiff's husband's Third-Party Function Report:

> The [ALJ] has also considered and gives little weight to the March 2011 Third Party Function Report filed by the claimant's husband. That report does not establish the claimant's level of functioning as of her date last insured. Again, the time gap makes accurate assessments for the relevant time period very difficult. Since he is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the report is questionable. Moreover, by virtue of the relationship as the spouse of the claimant, he cannot be considered a disinterested third party whose reporting would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.

R. 16 (citation omitted); *see* R. 129-44.

It is clear from the written decision that the ALJ considered Plaintiff's husband's Third-Party Function Report but found multiple, specific reasons to discount this evidence. Accordingly, the ALJ sufficiently followed the prescription of *Blea* and did not legally err in his evaluation of the Report. *See Blea*, 466 F.3d at 914-15; 20 C.F.R. § 404.1513(d)(4). *See generally* SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, . . . it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."). The requirement that the ALJ consider such third-party statements does not mandate that the ALJ adopt them in full. *Cf.* SSR 06-3p, 2006 WL 2329939, at *6 (prescribing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain" and that ALJ should "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case").

Plaintiff is correct that the ALJ did not expressly discuss Plaintiff's husband's hearing testimony; however, that omission was not error. Plaintiff broadly argues that this testimony shows Plaintiff's "disabling condition(s) . . . had first onset long before the date of last insured, because the date of the hearing was in 2012" and Plaintiff and her husband had been married for seven years at the date of the hearing. Pl.'s Br. at 8 & n.49 (citing R. 34). *But see* R. 33-34 (Plaintiff's husband testifying that they have been

6

married "for about six years"). The amount of time the couple had known each other, however, had been expressly noted in the Third-Party Function Report, where Plaintiff's husband stated he had known Plaintiff "7 years," and that Report was considered by the ALJ. R. 16, 129. Thus Plaintiff points to no aspect of the hearing testimony that would materially affect the ALJ's determination and no example of reversible legal error in the ALJ's assessment of either that testimony or the Third-Party Function Report.

### B. ALJ's Assessment of Medical Evidence

Included in the record are office treatment notes dating from 1999 to 2010 from Chris Martin, MD, reflecting that Plaintiff received treatment from Dr. Martin as her primary care physician during that time. R. 227-55. Dr. Martin's notes primarily focus upon Plaintiff's physical issues (not at issue on this appeal), but Dr. Martin also continually prescribed Plaintiff antidepressant medication beginning in 1999. R. 227. The record contains a letter from Dr. Martin dated March 14, 2011, in which Dr. Martin states that he is unable to provide an assessment of Plaintiff's current functional limitations, as requested by the state disability agency, because he has not examined Plaintiff since approximately March 2010. R. 226.

Also included in the record is a July 2011 psychological evaluation of Plaintiff by Richard Swink, PhD, in which Plaintiff was given various tests and procedures. R. 258-63. Dr. Swink diagnosed Plaintiff as having: major depressive disorder, severe without psychotic features; panic disorder with agoraphobia; personality disorder NOS; and attention deficit hyperactivity disorder. R. 261. In June 2012, Dr. Swink completed a Psychiatric Medical Source Statement ("PMSS") opining as to Plaintiff's mental ability

to do work-related activities. R. 270-75. In the PMSS, Dr. Swink restated his July 2011 diagnoses, opined that Plaintiff was disabled, and stated that Plaintiff's disability began "years ago in 1990s." R. 270.

### 1. Dr. Swink's PMSS

Plaintiff first argues that the ALJ improperly picked and chose among the medical evidence by giving little weight to Dr. Swink's Medical Source Statement. Pl.'s Br. at 9-12; Pl.'s Reply at 4;[1] Pl.'s Reply at 4; *see Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). In this respect, the ALJ discussed Dr. Swink's records and stated that he "ha[d] considered and gives little weight to . . . Dr. Swink's 2012 medical source statement and 2011 psych assessment with testing, as they are too removed from the relevant period to shed any light on the claimant's level of functioning at her date last insured." R. 14, 16 (citation omitted). According to Plaintiff, the ALJ improperly failed to give Dr. Swink's opinions the "great weight" they were due based upon them being issued by a treating physician. Pl.'s Br. at 9-10.

As a threshold matter, the record does not reflect that Dr. Swink qualifies as a "treating source," as that term is defined in the applicable regulation. Although Dr. Swink indicated and Plaintiff testified in 2012 that Plaintiff had been seeing Dr. Swink

---

[1] Plaintiff also extensively argues that the ALJ improperly evaluated the opinions of "Mr. Brooks" and "Dr. Chris Loucks." Pl.'s Br. at 3, 5-6, 7, 9, 10. As correctly noted by Defendant, however, the record does not reflect any treatment by individuals with these names. Def.'s Br. (Doc .No. 15) at 9. The undersigned has nonetheless considered the records to which Plaintiff appears to be referring in assessing whether the ALJ properly considered the medical evidence in this matter and whether the ALJ's determination is supported by substantial evidence.

"[e]very two weeks," there is no evidence of any such visits in the record.  *See* R. 31, 270.  Instead, the evidence consists only of Dr. Swink's evaluation of Plaintiff on an initial referral in July 2011 and the PMSS issued by Dr. Swink in July 2012.  R. 258-63, 270-75.  Absent any actual evidence of intervening visits, it has not been demonstrated that there was an "ongoing treatment relationship" between Plaintiff and Dr. Swink.  *See* 20 C.F.R. § 404.1502 ("Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source *when the medical evidence establishes* that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).").

Further, Plaintiff has not shown that the ALJ misevaluated the PMSS, which was issued almost five years after Plaintiff's date last insured, or the Psychological Evaluation, based upon a visit that occurred  four years after Plaintiff's date last insured. As an initial matter, Dr. Swink's opinion that that Plaintiff was "disabled" was not a medical opinion, but an opinion on a matter reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(d); R. 270.  Next, even assuming Dr. Swink was a treating source, an ALJ reasonably may assign little weight to a treating physician's opinion that is "provided years after the critical date" of the claimant's date last insured.  *See Marshall v. Astrue*, 290 F. App'x 90, 92 (10th Cir. 2008).  Dr. Swink's opinion that Plaintiff's disability began in the 1990s is not—and cannot be—supported by that physician's own observations or treatment of Plaintiff.  *Cf. id.* (upholding ALJ's assignment of little weight to treating physician opinion where physician's own notes did not support a

determination that claimant became disable prior to his last-insured date).  Because "the ALJ provided good reasons for discounting the medical opinions that were reached years after the period in question," reversal is not warranted on this basis.  *See Marshall*, 290 F. App'x at 93.

    2.  Dr. Martin's Records

In the written decision, the ALJ discussed Dr. Martin's treatment records at length, including Dr. Martin's noted impression in June 2004 of "[d]epression, which appears stable."  R. 13-14, 15, 16; *see* R. 243; *see also* R. 228, 244 (Dr. Martin noting impression of depression).  The ALJ stated: "The conclusion that the claimant did not have a physical impairment or combination of physical impairments that significantly limited her ability to perform basic work activities is supported by the treatment notes by her primary care physician [Dr. Martin], which are consistent with the opinions of the reviewing state agency medical consultants," to which the ALJ gave "great weight."  R. 16.

    Plaintiff argues that the ALJ erred by "reject[ing]" Dr. Martin's medical opinions.  Pl.'s Br. at 3, 9-11.  Plaintiff, however, fails to identify what opinions the ALJ purportedly should have adopted, which opinions allegedly demonstrate the existence of a severe impairment, or how Dr. Martin's opinions are not consistent with the opinions of the reviewing medical consultants to which the ALJ assigned great weight.  This failure to develop a factual or legal basis for reversal would itself be grounds to deny the alleged point of error.  *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).  The undersigned assumes, however, that Plaintiff's focus is upon Dr. Martin's impression that

Plaintiff was depressed and upon the fact that Dr. Martin had prescribed Plaintiff antidepressants, as discussed above.

Considered as a whole, Dr. Martin's records support the ALJ's determination that Plaintiff did not suffer from a mental impairment *that significantly limited Plaintiff's ability to work.* As noted by the ALJ, in June 2004 Dr. Martin stated that Plaintiff's affect appeared "okay" but in February 2005 he stated that her affect appeared "somewhat flat." R. 13-14, 244, 245. Plaintiff continued to receive antidepressant medication but her depression appeared "stable." R. 243; *see, e.g.*, R. 238 (Plaintiff being given monthly samples of Paxil). While Dr. Martin's scattered references to depression and his other records reflect *some* degree of mental impairment during the relevant time period, the ALJ's determination that Dr. Martin's records were consistent with the state reviewing medical consultants (who did not find evidence of a *severe* impairment prior to June 30, 2007) is supported by those same records and sufficiently explained in the written decision so as to allow meaningful review. Reversal on this basis is not warranted.

## C. Concurrent Impairments

Finally, Plaintiff argues that she suffers from "concurrent impairments which, when considered in combination, are severe" for purposes of steps two and beyond of the ALJ's sequential analysis. Pl.'s Br. at 11-12; 20 C.F.R. § 404.1522(b). Relying upon the July 2011 Psychological Evaluation completed by Dr. Swink, Plaintiff contends: "The Manic Depressive Disorder w/ Psychotic Features and panic Disorder with agoraphobia; which are all very severe mental illnesses on their own. Together they prevent [Plaintiff]

from working and impede her daily life severely." Pl.'s Br. at 11. Plaintiff also points to her own testimony as to the difficulties she faces in her activities and in public due to her anxiety and panic attacks. Pl.'s Br. at 11-12.

First, Plaintiff misstates Dr. Swink's diagnosis, which was that Plaintiff had major depressive disorder, severe *without* psychotic features. *Compare* Pl.'s Br. at 4, 11, *with* R. 261. Second, the ALJ properly discounted the opinions of Dr. Swink regarding Plaintiff's mental impairments and their associated functional limitations, as discussed above in Part B.1. Third, neither Plaintiff's bare conclusion that her impairments were "very severe" nor her own testimony establishes that her combination of impairments "significantly limit[ed]" Plaintiff's ability to work during the relevant time period. *See* 20 C.F.R. § 404.1520(c); R. 32-33 (Plaintiff testifying that she takes her daughter to school, has attended her daughter's music performance, does the grocery shopping, and sometimes cleans), 122 (Plaintiff stating that she stopped working in July 2007 because she became pregnant and experienced pain when working), 138-43 (Plaintiff reporting that she buys pet food, takes care of her three children, cleans and does laundry, sometimes cooks, and drives a car); *cf. Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) ("Claimant's testimony alone cannot establish the existence of disabling pain."). Other than Dr. Swink's opinions, Plaintiff cites to no medical evidence of her alleged impairments' deleterious effect on her ability to work, singularly or in combination. Plaintiff has not shown that reversal is required on this basis.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72(c). Any such objections must be filed with the Clerk of this Court by March 30, 2015. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 16th day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE